IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARVIN BANKS, | : | |
| *Plaintiff*, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 17-0329 |
| | : | |
| SUSAN KENDRA, R.N., et al., | : | |
| *Defendants*. | : | |

**Jones II, J.**                                                                                                    December 7, 2017

### MEMORANDUM

Pursuant to 42 U.S.C. § 1983, state prisoner Marvin Banks brought this *pro se* action against various officials of the Delaware County Prisons' George W. Hill Correctional Facility , alleging violations of the Eighth and First Amendments of the U.S. Constitution.  The Complaint names the following defendants: Chief Richard Leach, Warden David Bryne , three correctional officers (Gloria Jenkins, Christopher Page, and Finet Gilbert), three sergeants (Daniel Kelly, Geoffrey Baldwin and "Abt"), three nurses (Susan Kendra, Samantha Izzi, and "Peggy"), and the Community Education Centers, Inc.  (ECF No. 5 at 2-3).

Before this Court is Defendants' Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim or, in the alternative, for a more definite statement pursuant to Fed. R. Civ. P. 12(e).  (ECF No. 13 at 6, 22).

### PROCEDURAL BACKGROUND

Plaintiff filed the Complaint on January 23, 2017. (ECF No. 1-1).  On April 13, 2017,

Defendants filed the Rule 12(b)(6), or 12(e), Motion that is the subject of this Memorandum. (ECF No. 13). A few days later, Plaintiff filed a more definite statement pursuant to Rule 12(e) without leave of court. (ECF No. 14). Plaintiff has not filed any response with respect to the Rule 12(b)(6) Motion. This Court now resolves Defendants' unopposed Rule 12(b)(6) Motion.

## STANDARD OF REVIEW

Before granting an unopposed Rule 12(b)(6) motion, a district court should satisfy itself that the complaint does not, in fact, state a claim. *Ray v. Reed*, 240 F.App'x 455, 456 (3d Cir. 2007) (citing *Stackhouse v. Mazurkiewicz*, 95 l F.2d 29, 30 (3d Cir. 1991)).

In deciding a 12(b)(6) motion, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). When, as here, the plaintiff is a *pro se* litigant, courts "have a special obligation to construe his complaint liberally." *Zilich v. Lucht*, 981 F.2d 694 (3d Cir. 1992) (citing to *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Nevertheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "[A]ll civil complaints must now set out sufficient factual matter to show that the claim is facially plausible." *Fowler*, 578 F.3d at 210 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Courts may consider documents attached to the complaint in deciding a 12(b)(6) motion. *See Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32 (3d Cir. 2011).

## FACTUAL ALLEGATIONS

According to the Complaint, Plaintiff was subjected to inhumane conditions while unduly confined in administrative segregation and disciplinary detention in retaliation for filing grievances at the George W. Hill Correctional Facility.[1] (ECF No. 5). He claims Defendants denied him access to grievance procedures and medical treatment, defamed his character, abused their authority, unnecessarily used force/authority, acted negligently, and caused him trauma, emotional distress, and physical injury. *Id*. at 15.

### A. Administrative Segregation

The events giving rise to this suit began on November 24, 2016, when Plaintiff was cited purportedly for fighting another inmate and attempting to steal that inmate's possessions. (ECF No. 5 at 24). Plaintiff alleges that this disciplinary report was "bogus." *Id*. Plaintiff further alleges that he was placed in administrative segregation, rather than the restricted housing unit, in retaliation for filing grievances. *Id*. at 15.

In administrative segregation, Plaintiff's cell (10-C-104) was filled with bed bugs, causing him almost immediately to break out in hives. *Id*. at 7. When Plaintiff warned the entire cell block of the bug infestation, Officer Page told Plaintiff, "everything will happen on our

---

[1] The factual allegations are presented in the light most favorable to Plaintiff. *See Phillips*, 515 F.3d at 233.

time," "you should have kept your mouth shut," and "you should have never made a statement to the whole block about the bugs." *Id*. at 19.

Plaintiff filed a grievance, complaining about the bed bugs and the hives. (ECF No. 5 at 7). He also complained that it took eight hours for prison staff to fulfill his request for bed sheets. *Id*. at 7. In response to this grievance, Chief Leach advised Plaintiff to inform his unit manager about the conditions of the cell. *Id*. at 7, 17. Plaintiff reported the conditions of his cell and his bug bites to several defendants, including the unit manager, Sgt. Kelly. *Id*. at 20-21. Additionally, Plaintiff wrote a letter to Warden Byrne, informing him about the situation. *Id*. at 4, 31. That letter was returned to Plaintiff unopened and unread. *Id*. at 4, 18.

Sgt. Kelly met with Plaintiff, and although he told Plaintiff that he would pass the information along, he never did. *Id*. at 17. Sgt. Baldwin responded to Plaintiff and told him he would call medical, but failed to do so. *Id*. at 17. He also made "sarcastic remarks" and demonstrated a "vulgar attitude." *Id*. at 4, 17, 32. Both Baldwin and Kelly denied Plaintiff's requests to advance Plaintiff's grievances to the next level. *Id*. at 4.

Plaintiff alleges he received inadequate medical treatment for his bug bites. In response to Plaintiff's requests, Officer Jenkins, in her role as the "overseer" of Plaintiff's cell, and Officer Gilbert refused to provide him with cleaning supplies and medical treatment. *Id*. at 4, 17-18, 31. Plaintiff was transported out of cell 10-C-104 to see Nurse Peggy about three weeks after being placed in administrative segregation. *Id.* at 19. Plaintiff was neither given new clothes, linens, nor given the opportunity to take a "thorough shower" with medicated shampoo. *Id*. at 18-19. Nurse Peggy informed Plaintiff that it appeared that he did have bug bites, and ordered an

4

immediate sanitation and change of Plaintiff's mattresses, beds, and linens. *Id*. at 14, 18. Another nurse, Nurse Kendra, prescribed Plaintiff Benadryl to treat his skin irritation from the bug bites but cleared him from the quarantine process without thoroughly investigating his cell, allegedly out of retaliation. *Id*. at 14. And, after she left Plaintiff's cell, Plaintiff noticed more bugs and more bites. *Id*. at 14. Plaintiff alleges he was not properly quarantined. *Id.* Furthermore, Plaintiff never received new linens, a new mattress, or any sanitization supplies. *Id.* at 15, 22. Even though the timeline of events is unclear, the pleadings indicate Plaintiff was "released to 7-D-211," after being in 10-C-104, "then moved to 7-A-104, … and then back to 10-C-106." *Id.* at 2, 3.

### B. Disciplinary Detention

Once released from administrative segregation, Plaintiff filed a grievance complaining about the medical treatment he had received. Three days later, Sgt. Abt "somehow" found Plaintiff guilty of a new disciplinary violation, and placed Plaintiff in disciplinary detention for another twenty days, allegedly out of retaliation for filing the grievance. (ECF No. 5 at 14, 25).

In disciplinary detention, Plaintiff noticed that his old linens and property were left outside his new cell in a bag with holes, allowing the bugs to crawl out of it. *Id*. at 16. Additionally, the toilet in this cell was clogged and leaked feces and urine that flooded the floor. *Id*. at 16. Plaintiff's "insides [were] hurting" because he could not relieve himself in those conditions. *Id*. at 16. This ordeal lasted for over three days until a prison official cleaned the dirty water and removed the bag. *Id*. at 16. Plaintiff was still being bitten by bugs and still being denied medical attention and access to the grievance process throughout his time in disciplinary detention. *Id*. at 16. Plaintiff was scheduled to be released from this cell on January 13, 2017.

5

*Id*. at 25. Plaintiff was presumably still being housed in this same cell as of January 23, 2017 when he filed this Complaint. *Id.*

## DISCUSSION

Plaintiff presents three federal claims: (1) unsanitary prison conditions in violation of the Eighth Amendment; (2) deliberate indifference to medical needs in violation of the Eighth Amendment; and (3) retaliation in violation of the First Amendment. (ECF No. 5). Plaintiff brings each of these claims in a handwritten *pro se* document. *Id*. Given Plaintiff's *pro se* nature, his handwritten *pro se* document will be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). All claims in Plaintiff's handwritten *pro se* document "however inartfully pleaded, [will] be held to less stringent standards than formal pleadings drafted by lawyers and [will] only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (internal quotations removed). This Court will address each claim in turn.

**I.  Plaintiff Fails to State an Eighth Amendment Claim**

    A.  <u>The Alleged Conditions of Confinement Do Not Fall Below Constitutional Norms</u>

Governing Plaintiff's unsanitary prison conditions claim is the Eighth Amendment of the United States Constitution. The Eighth Amendment, in only three words, imposes the constitutional limitation upon punishments: they cannot be "cruel and unusual." *Rhodes v. Chapman*, 452 U.S. 337, 345 (1981). Cruel and unusual has been expanded since the enactment of the Eighth Amendment to prohibit punishments which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia,* 428 U.S. 153, 173 (1976). The Supreme Court has articulated that there is no test to determine the reach of the

Eighth Amendment, but instead it "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Chapman*, 452 U.S. at 346.

Although there is no exact test by which this Court can determine cruel and unusual punishment, case law does provide guidance since this Court has no authority "to impose its own notions of enlightened policy." *Tillery v. Owens*, 907 F.2d 418, 426 (3d Cir. 1990). Thus, the Eighth Amendment is not violated with inadequacies of prison conditions, but instead "only where an inmate is deprived of "the minimal civilized measure of life's necessities." *Id.* (internal quotations omitted.) Examples of such deprivations have been found in "[t] he denial of medical care, prolonged isolation in dehumanizing conditions, exposure to pervasive risk of physical assault, severe overcrowding, and unsanitary conditions [which] have all been found to be cruel and unusual under contemporary standards of decency." *Id.*

Plaintiff alleges a bundle of complaints, but taken as a whole those complaints do not amount to an Eighth Amendment "cruel and unusual" constitutional violation. Plaintiff claims that he was placed in a cell that was filled with beg bugs causing him to break out in hives. (ECF No. 5 at 4). Plaintiff also alleges that the second cell he was placed in was also unconstitutionally unsanitary. *Id* at 16. Plaintiff further claims that Defendants Chief Leach, Sgt. Kelly, Sgt. Baldwin, C.O. Jenkins, C.O. Gilbert, and David Byrne all displayed deliberate indifference to these conditions and the violations of his rights. *Id.* at 4, 7, 17-18.

In this case, Plaintiff does not provide enough detailed and troubling claims regarding the conditions of his confinement, which could sufficiently approximate the conditions found to be unconstitutional in Supreme Court case law such as *Tillery*. For instance, even if Plaintiff was

7

placed in a cell riddled with bug infestation and with a toilet that overflowed, those inconveniences will not rise to a constitutional violation because Plaintiff's complaints did not go unanswered. (ECF No. 5 at 4,16). As stated before, the timeline in Plaintiff's Complaint is not clear, but the pleadings indicate Plaintiff was "released to 7-D-211," after being in 10-C-104, "then moved to 7-A-104, … and then back to 10-C-[106]." (ECF No. 5 at 3). Essentially, it is impossible for Plaintiff to have been in the bed bug ridden cell for the entire two months that are the subject of this complaint. The facts also show that an officer eventually came and cleaned the feces within his cell. *Id.* at 16. Although one could assume that the actions of the individual supervising Plaintiff could have been far more expeditious, the facts remain that Plaintiff changed cells, saw a medical professional and was given medicine to address the bites. Finally, Plaintiff was tended to by an official to clean his cell. Because of the attention given to Plaintiff, his allegations cannot amount to actions equaling the "cruel and unusual" standard of a constitutional violation.

Assuming all facts to be true and under any reasonable reading of the complaint, Plaintiff will not be entitled to relief for an Eighth Amendment claim of unsanitary prison conditions, thus Defendants are entitled to dismissal. This Court must therefore grant Defendants' Motion to Dismiss as to Plaintiff's Eighth Amendment claim of unsanitary prison conditions.

   B. <u>Plaintiff Does Not Sufficiently Plead a Claim for Deliberate Indifference to Medical Needs</u>

Plaintiff alleges that the medical care provided to him by Defendants Nurse Peggy and Nurse Kendra was unconstitutionally inadequate. (ECF No. 5 at 14, 18-19). Defendants argue for dismissal on the grounds that the Complaint fails to establish that Plaintiff's medical treatment

constituted deliberate indifference. (ECF No. 13 at 13).

For a deliberate indifference claim to rise to the level of an Eighth Amendment violation, a party must show that a prison official acted with "deliberate indifference" to an inmate's "serious medical needs" which would constitute an "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A serious medical need is defined as one "that has been diagnosed by a physician as requiring immediate medical treatment or is one that is so obvious that even a lay person would clearly and easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir.1987). Whether this unnecessary and wanton infliction of pain derives from medical personnel or prison officers is irrelevant. *Id.* At 104-105. Instead, the question is whether those individuals were "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* With "deliberate" and "intentional" being the key words in case law, an inadvertent failure to provide adequate medical care does not rise to the level of deliberate indifference to violate one's Eighth Amendment rights. *Id.* at 105-106. "Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id.* Instead, for a claim to be cognizable, it must "allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs…[which is the]… only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.* at 106.

In this present matter, Plaintiff merely alleges that the medical care provided to him by Defendants Nurse Peggy and Nurse Kendra was unconstitutionally inadequate. (ECF No. 5 at 14,

9

18-19). By inadequate, Plaintiff states that Nurse Peggy did not follow the proper quarantine procedures and Nurse Kendra cleared him from the quarantine process without thoroughly investigating his cell. *Id.* at 14, 18-19. These allegations are essentially "inadvertent failures to provide medical care," which case law has stated does not rise to the level of a constitutional violation. At best, the nurses' actions were acts of negligence, not acts rising to the level of deliberate conduct required for a violation of the Eighth Amendment. Here, Plaintiff fails to allege specific facts or omissions by Defendants Nurse Peggy and Nurse Kendra that evidence "deliberate indifference" to Plaintiff's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (noting that a prison official "cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

The only omissions that this Court finds in the pleadings is that Nurse Peggy allegedly did not follow quarantine procedures and that Nurse Kendra cleared Plaintiff from the quarantine process without thoroughly investigating his cell. *Id.* at 14, 18-19. There are no facts pleaded to indicate that Defendants Nurse Peggy and Nurse Kendra had knowledge of the severity of such injuries or that they deliberately disregarded warning signs that Plaintiff was at risk. Facts show that both Nurse Peggy and Nurse Kendra, diagnosed, medicated and advised Plaintiff on how to respond to his injuries. With such pleadings, this Court is unable to "draw the reasonable inference that [Defendants are] liable for the misconduct. *Santiago v. WarminsterTownship,* 629 F.3d 121, 132 (3d Cir. 2010). Therefore, Plaintiff's allegations do not reach "the high bar

for deliberate indifference," *Hankey v. Wexford Health Sources, Inc.*, 383 Fed.Appx. 165, 170 (3d Cir.2010) (nonprecedential), and Plaintiff fails to state an Eighth Amendment claim against the individual Defendants for deliberate indifference to medical needs.

Assuming all facts to be true and under any reasonable reading of the complaint, Plaintiff will not be entitled to relief for an Eighth Amendment claim of deliberate indifference to medical needs, thus Defendants are entitled to dismissal. This Court must therefore grant Defendants' Motion to Dismiss as to Plaintiff's Eighth Amendment claims of deliberate indifference to medical needs.

## II. The First Amendment Retaliation Claim May Proceed

Plaintiff alleges a bevy of acts bestowed upon him out of retaliation. Plaintiff alleges that his disciplinary action and subsequent cell placements were acts of unlawful retaliation. (ECF No. 5 at 4, 25). Specifically, Plaintiff pleads that Defendant Sgt. Abt "somehow" found him guilty of another disciplinary violation. *Id.* at 25. Plaintiff also alleges that proper quarantine procedures were not followed by Nurse Kendra out of retaliation. *Id.* at 14. Defendants argue that the pleadings are insufficient to state a claim for unlawful retaliation. (ECF No. 13 at 19).

To establish a claim of unlawful retaliation, Plaintiff must demonstrate that: (1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). Defendants challenge whether Plaintiff has alleged any fact to demonstrate that he was engaged in constitutionally protected conduct and whether Plaintiff has stated which action and by which

11

Defendant's he was retaliated against. (ECF No. 13).

A. Plaintiff's Conduct was Constitutionally Protected

Plaintiff's complaint, in regards to his retaliation claim, alleges a set of plausible constitutional violations. Plaintiff alleges that he was retaliated against for filing grievances in response to his cell allegedly having bed bugs. (ECF No. 5 at 15). It is well established in the Third Circuit that filing grievances or lawsuits is activity that is protected by the First Amendment. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). The record shows that Plaintiff filed grievance forms on November 27, 2016 and December 22, 2016. *Id.* at 7, 22. Thus, Plaintiff's conduct was constitutionally protected by the First Amendment and Plaintiff's complaint is sufficient to establish the first prong of a prima facie case of retaliation.

B. Plaintiff Suffered an Adverse Action at the Hands of Prison Officials

"An adverse consequence need not be great in order to be actionable[;] rather, it need only be more than de minimis." *Watson v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016) (internal quotations omitted). Plaintiff's Complaint is sufficient to show that he alleged a number of adverse actions at the hands of prison officials. The most convincing allegation to this Court is that Plaintiff alleges that he "received puss filled bumps. Bites that are red and inflamed from the bug bites dried up" which occurred from Plaintiff going in and out of a bed bug infested cell for over a month. (ECF No. 5 at 3). Plaintiff also pleads that Defendant Sgt. Abt "somehow" found him guilty of another disciplinary violation. *Id.* at 25. Plaintiff further alleges that he was not allowed to complete the official grievance process and that his complaints went unanswered when he wrote a letter to the warden of the correctional facility. *Id*. at 4. These allegations are

clearly adverse actions because had Plaintiff received the adequate medical attention he deserved, his injuries may not have become so severe or had Plaintiff been allowed to complete the grievance process, maybe his cell would have adequately been tended to or he would not have been found guilty of another disciplinary violation. Plaintiff's allegation supersede the "more than a de minimus" threshold as articulated in case law, thus Plaintiff's Complaint is sufficient to establish the second prong of a prima facie case of retaliation.

    C. Plaintiff's Constitutionally Protected Conduct was a Substantial or Motivating Factor in the Decision to Discipline Him

To get over the final hurdle of pleading a prima facie retaliation claim, Plaintiff must show that the harm he suffered was the result of his protected activity. *Watson v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016). Plaintiff can establish the third element of a prima facie case of retaliation with evidence of: "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Id.* At 424. "[T]he timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." *Id.*

In reviewing a motion to dismiss, this Court must accept all allegations in the Complaint as true and construe the allegations in favor of the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). And since Plaintiff files his complaint *pro se*, this Court is allowed to liberally construe that allegations made by Plaintiff. *Zilich v. Lucht*, 981 F.2d 694 (3d Cir. 1992) (citing to *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Taking the two aforementioned facts, this Court finds that there was an unusually suggestive temporal proximity with Plaintiff filing his grievances and Plaintiff being left within

13

the bug infested cell, Plaintiff's grievances being ignored, Plaintiff receiving another disciplinary action and Plaintiff not receiving immediate attention for his overflown toilet.

Plaintiff's Complaint seems to argue that because he filed grievances about the inhabitability of his cell, he was retaliated against. According to Plaintiff, this retaliation showed itself in many ways. First, according to Plaintiff, he was supposed to be released from administrative segregation which contained the bug infested cell on December 20th, but was made to stay in the cell due to another disciplinary action. *Id.* at 15. Moreover, this claim gains more credibility with Plaintiff's allegation that Officer Page told Plaintiff, "everything will happen on our time," "you should have kept your mouth shut," and "you should have never made a statement to the whole block about the bugs." *Id*. at 19. Lastly, after continuous complaints, grievances and letters to the warden, Plaintiff was forced to stay in the cell for days with a broken toilet that would not flush and ran onto the floor with feces. *Id.* at 16. Before Plaintiff was finally allowed to receive new linings and adequate medical attention, he constantly received sarcastic responses and was constantly ignored. Plaintiff was supposedly scheduled to be released from this cell on January 13, 2017, but was presumably still being housed in this same cell as of January 23, 2017 when he filed this Complaint. *Id.* at 25.

A reasonable reading of Plaintiff's Complaint and its allegations leads this Court to believe that Plaintiff may be entitled to relief. Defendants are, therefore, not entitled to dismiss Plaintiff's Complaint with respect to Plaintiff's claim of unlawful retaliation in violation of the First Amendment. Defendants' Motion to Dismiss is denied as to Plaintiff's claim of retaliation.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. Defendants' Motion is DENIED as it relates to Plaintiff's First Amendment Claim of Retaliation and is GRANTED as it relates to Plaintiff's Eighth Amendment claims of Unsanitary Prison Conditions and Deliberate Indifference to Medical Needs. An appropriate Order follows.

BY THE COURT:

*/s/ C. Darnell Jones, II*
―――――――――――――――――
C. Darnell Jones, II   J.